UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MULTIPLE ENERGY TECHNOLOGIES, LLC,

        Plaintiff,

   v.

MANATT, PHELPS & PHILLIPS, LLP,

        Defendant.

Case No. 1:20-CV-04235 (AT)

[Oral Argument Request]

**DEFENDANT MANATT PHELPS & PHILLIPS, LLP'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(6)**

FRANKFURT KURNIT KLEIN & SELZ, PC
Nicole Hyland
28 Liberty Street, 35th Fl.
New York, NY 10005
(212) 980-0120

Vishwanath Kootala Mohan (Pro Hac Vice)
2029 Century Park East, Ste. 1060
Los Angeles, CA 90067
(310) 579-9600

*Attorneys for Defendant Manatt, Phelps & Phillips, LLP*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL ALLEGATIONS IN THE COMPLAINT ................................................................ 3

LEGAL STANDARD ................................................................................................................. 5

ARGUMENT .............................................................................................................................. 6

    I.    MET'S FRAUDULENT INDUCEMENT AND CONSTRUCTIVE FRAUD CLAIMS SHOULD BE DISMISSED AS DUPLICATIVE OF ITS BREACH OF CONTRACT CLAIM ................................................................. 6

    II.    MET'S CONSTRUCTIVE FRAUD CLAIM SHOULD BE DISMISSED BECAUSE IT CANNOT PLAUSIBLY ALLEGE A FIDUCIARY DUTY ......... 9

    III.    MET'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED AS DUPLICATIVE OF ITS CONTRACT AND QUASI-CONTRACT CLAIMS ...................................................................................... 11

CONCLUSION ......................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Records, Inc. v. Capitol Records, Inc.*,
    529 N.Y.S.2d 279 (1988) ................................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................... 5

*Atla-Medine v. Crompton Corp.*,
    No. 00 CIV 5901 HB, 2001 WL 170666 (S.D.N.Y. Feb. 21, 2001) ................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................... 5

*In re Carney*,
    158 N.Y.S. 585 (Sup. Ct. 1916) ....................................................................................... 10

*Clifford v. Braun*,
    75 N.Y.S. 856 (2d Dep't 1902) ......................................................................................... 10

*Crabtree v. Tristar Auto. Grp., Inc.*,
    776 F. Supp. 155 (S.D.N.Y. 1991) ..................................................................................... 7

*D'Jamoos v. Griffith*,
    368 F. Supp. 2d 200 (E.D.N.Y. 2005) .............................................................................. 14

*Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*,
    68 N.Y.2d 954 (1986) ......................................................................................................... 9

*Dorset Indus., Inc. v. Unified Grocers, Inc.*,
    893 F. Supp. 2d 395 (E.D.N.Y. 2012) .............................................................................. 12

*Excevarria v. Dr Pepper Snapple Grp., Inc.*,
    764 F. App'x 108 (2d Cir. 2019) ........................................................................................ 5

*Faulkner v. Arista Records LLC*,
    602 F. Supp. 2d 470 (S.D.N.Y. 2009) .............................................................................. 11

*Filler v. Hanvit Bank*,
    No. 01 CIV. 9510 (MGC), 2003 WL 22110773 (S.D.N.Y. Sept. 12, 2003) ...................... 8

*Harbinger Capital Partners LLC v. Deere & Co.*,
    632 F. App'x 653 (2d Cir. 2015) ........................................................................................ 9

*Jacobson v. Sassower*,
    452 N.Y.S.2d 981 (Civ. Ct. 1982) ...................................................................................10

*Miller v. Wells Fargo Bank, N.A.*,
    994 F. Supp. 2d 542 (S.D.N.Y. 2014).............................................................................11

*Multiple Energy Techs., LLC v. Hologenix, LLC*,
    No. CV 19-1483 PA, 2019 WL 2619649 (C.D. Cal. June 3, 2019) .................................4

*N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*,
    25 F. Supp. 3d 459 (S.D.N.Y. 2014)...............................................................................14

*Ostano Commerzanstalt v. Telewide Sys., Inc.*,
    794 F.2d 763 (2d Cir. 1986)..............................................................................................8

*In re Platinum-Beechwood Litig.*,
    427 F. Supp. 3d 395 (S.D.N.Y. 2019)...............................................................................8

*Sager v. Friedman*,
    270 N.Y. 472 (1936) .........................................................................................................8

*Sofi Classic S.A. de C.V. v. Hurowitz*,
    444 F. Supp. 2d 231 (S.D.N.Y. 2006).............................................................................12

*Sudul v. Computer Outsourcing Servs.*,
    868 F. Supp. 59 (S.D.N.Y. 1994) .....................................................................................6

*Transhorn, Ltd. v. United Techs. Corp. (In re Elevator Antitrust Litig.)*,
    502 F.3d 47 (2d Cir. 2007)................................................................................................5

*Young v. Rosenberg*,
    No. 14CV9377, 2017 WL 3267769 (S.D.N.Y. Aug. 1, 2017) .......................................13

## Other Authorities

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 5

N.Y. Rules of Prof'l Cond., R. 1.6(5)(i)&(ii) ....................................................................1

Defendant Manatt Phelps & Phillips, LLP ("Manatt") respectfully submits this memorandum of law in support of its motion to dismiss, pursuant to the Fed. R. Civ. P. 12(b)(6), Plaintiff Multiple Energy Technologies, LLC ("MET")'s claims in the First Amended Complaint ("Complaint" or "Compl.") for fraudulent inducement, constructive fraud, and declaratory judgment.[1]

## PRELIMINARY STATEMENT

MET's Complaint is, at best, a straightforward breach of contract claim arising from Manatt's representation of MET in a false-advertising lawsuit against Hologenix, LLC ("Hologenix").[2]  At the center of this dispute is an engagement letter executed on or about February 12, 2019 between MET and Manatt for legal services relating to the false-advertising lawsuit (the "Engagement Letter").  The dispute can be succinctly summarized in two sentences.  MET believes that, after suing and obtaining a preliminary injunction against Hologenix, Manatt was contractually required to bring a lawsuit against Under Armour, Inc. ("Under Armour") within the same fee cap that applied to the false-advertising lawsuit against Hologenix.  *See* Compl. ¶ 18.  Manatt disagrees with MET's interpretation of the Engagement Letter and is confident that the evidence will show that the parties understood that the fee cap applied only to a single lawsuit against Hologenix, with the Under Armour fee to be negotiated later.  That is the

---

[1] To the extent that this motion or any other statement or submissions in this Action contain confidential or privileged information, MET has waived any claim of confidentiality or privilege by filing the Complaint, which accuses Manatt of wrongdoing and seeks to deprive Manatt of its legal fees.  *See* N.Y. Rules of Prof'l Cond., R. 1.6(5)(i)&(ii) (permitting an attorney to reveal or use confidential information to defend against "an accusation of wrongful conduct" or "to establish or collect a fee").

[2] Although Manatt does not seek dismissal of the breach of contract or the unjust enrichment claims at this stage, it is confident the evidence will reveal those claims to be meritless for several reasons, not the least of which is because MET has suffered no damages.

entirety of the dispute.  This Court should reject MET's attempt to transform this garden-variety contract dispute into claims for fraud and declaratory judgment for the following reasons.

*First*, neither the fraudulent inducement claim nor the constructive fraud claim states a cause of action because each merely restates MET's breach of contract claim.  Both fraud claims allege that, during negotiations over the Engagement Letter, Manatt falsely promised that the $925,000 fee cap contained in the Engagement Letter would cover a lawsuit against Under Armour.  This is the same allegation that underpins MET's breach of contract claim, which alleges that the Engagement Letter itself contains such a promise.  As discussed further below, New York law is clear that a party's alleged intent not to perform a contract does not support a fraud claim.

*Second*, MET's constructive fraud claim is based on the incoherent theory that an attorney's fiduciary duty retroactively applies to a period of time before the attorney began representing the client.  Specifically, MET alleges that Manatt had a fiduciary duty to disclose its alleged intent not to include Under Armour in the fee cap at the time it was negotiating the Engagement Letter.  *See* Compl. ¶¶ 42–43.  Although MET has since conceded that an attorney owes no fiduciary duty during negotiations over an engagement letter with a new client, it now alleges that—after the execution of the engagement letter—a fiduciary duty sprung into existence, which required Manatt to disclose the intent that it allegedly had prior to said execution.  *See* Aug. 27, 2020 Letter to Judge Analisa Torres from Andrew M. McNeil ("Second Opp. Letter") at 1–2, ECF No. 22.  Not only does this argument have no support in the law, but it nullifies the rule (which MET acknowledges) that attorneys have no fiduciary duty to a client prior to entering into an attorney-client relationship.

*Finally*, MET's declaratory judgment claim must be dismissed because it is duplicative of its breach of contract claim. MET seeks a declaration that it is justified in not paying Manatt's outstanding invoices and that it is entitled to a return of the fees already paid to Manatt for services rendered under the Engagement Letter. This claim is already encompassed by MET's breach of contract claim, which will necessarily determine the rights and obligations of the parties under the Engagement Letter.

## FACTUAL ALLEGATIONS IN THE COMPLAINT[3]

The Complaint alleges that in late 2018, MET and Manatt began negotiating the terms of Manatt's potential engagement in MET's false-advertising disputes with Hologenix and Under Armour. *See* Compl. ¶ 37. These negotiations allegedly continued until early 2019. *Id.* Although the Complaint is notably silent regarding the details of the negotiations, it alleges that "Manatt affirmatively stated that it was prepared to and had received firm-management approval [sic] enter into a capped-fee arrangement[.]" *Id.*

The Complaint further alleges that, at the conclusion of the negotiations, on or around February 12, 2019, MET and Manatt entered into the Engagement Letter. *Id.* ¶¶ 9, 10. Pursuant to that Engagement Letter, Manatt was allegedly to "represent and advise [MET] in connection with a false advertising claim against Hologenix LLC, Hologenix, Inc., and Under Armour (the

---

[3] MET's factual allegations are highly misleading and, in some instances, demonstrably false. For example, MET suggests that Manatt should have included Under Armour in the lawsuit against Hologenix. *See* Compl. ¶2. The evidence will demonstrate that MET's strategy from the outset was to sue only Hologenix, in the first instance, seek a preliminary injunction, and only then (if successful) move forward against Under Armour. In fact, before signing the Engagement Letter, MET (through its other counsel, Wilson Sonsini Goodrich & Rosati), furnished Manatt with a draft complaint naming Hologenix as the sole defendant. The Complaint also neglects to disclose that by successfully securing the preliminary injunction against Hologenix, Manatt proved that MET was likely to prevail on the merits at trial and would suffer irreparable damage absent the injunction. The injunction also greatly increased MET's changes of bringing a successful lawsuit against Under Armour.

'False Advertising Claim')." *Id.* ¶ 13. The Engagement Letter also allegedly provided for "a cap on the fees MET would be required to pay." *Id*. ¶ 14. The Complaint contends that "[t]he cap on legal fees was a material and necessary term to the Engagement Letter" and "[w]ithout it, MET would not have hired Manatt." *Id*. ¶ 15.

On February 28, 2019, Manatt filed a lawsuit against Hologenix on MET's behalf (the "Hologenix Lawsuit"). *Id.* ¶ 18. Notably, as MET was aware at the time, the Hologenix Lawsuit named only Hologenix as a defendant, and not Under Armour. *Id.* Manatt continued to litigate the Hologenix Lawsuit on MET's behalf and on June 3, 2019, secured a preliminary injunction against Hologenix. *See id.* ¶ 2; *Multiple Energy Techs., LLC v. Hologenix*, *LLC*, No. CV 19-1483 PA, 2019 WL 2619649, at *1 (C.D. Cal. June 3, 2019).

The Complaint vaguely alleges that, at some unspecified time after the Hologenix Lawsuit was filed, the parties discussed filing a lawsuit against Under Armour, but were unable to agree on the fees for such a lawsuit. *See* Compl. ¶¶ 18–20. As noted above, this impasse was allegedly due to the parties' different interpretations of the fee-cap provision in the Engagement Letter. *See id.* Through this time, Manatt continued representing MET in the Hologenix Lawsuit and invoicing MET for those services. *See id.* ¶ 28. MET stopped paying Manatt's fees and, ultimately, the representation was terminated.[4] *Id.* MET alleges that, due to its termination of

---

[4] As with most of its allegations, MET's description of these discussions regarding the Under Armour litigation is highly misleading. The evidence will show that MET did not assert that Under Armour was covered by the $925,000 fee cap until months after the parties had been negotiating the budget and fee arrangement for the Under Armour litigation. This is an argument that MET concocted later to justify its termination of Manatt and escape the Engagement Letter's fee obligations. The Complaint also misleadingly suggests that it was Manatt that terminated the engagement when it allegedly "withdrew" from the Hologenix Lawsuit. Compl. ¶ 20. The record will show that MET terminated Manatt by instructing Manatt to stop all work on the Hologenix Lawsuit while MET hired new counsel to substitute into the case.

Manatt and hiring of new counsel, MET has incurred fees in excess of the $925,000 fee cap, for which it seeks to hold Manatt responsible. *Id.* ¶ 21.

## LEGAL STANDARD

On a motion to dismiss under FRCP 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—a standard that requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations omitted). "Although for the purpose of a motion to dismiss" a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (citations and quotations omitted). A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Plaintiffs must plead facts sufficient to "nudge [their] claims across the line from conceivable to plausible." *Transhorn, Ltd. v. United Techs. Corp. (In re Elevator Antitrust Litig.)*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (affirming S.D.N.Y.'s dismissal of plaintiffs' claims because they were "unable to allege facts that would provide plausible grounds to infer an agreement . . . ." (citations and quotations omitted)). "A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Excevarria v. Dr Pepper Snapple Grp., Inc.*, 764 F. App'x 108, 109 (2d Cir. 2019) (quoting *Twombly*, 550 U.S. at 558) (affirming S.D.N.Y.'s dismissal of plaintiff's complaint as a matter of law).

# ARGUMENT

## I.

## MET'S FRAUDULENT INDUCEMENT AND CONSTRUCTIVE FRAUD CLAIMS SHOULD BE DISMISSED AS DUPLICATIVE OF ITS BREACH OF CONTRACT CLAIM

In its Fourth Cause of Action, MET alleges that Manatt fraudulently induced it into signing the Engagement Letter by allegedly misrepresenting Manatt's intent to abide by the terms of the fee cap set forth in the Engagement Letter. *See* Compl. ¶¶ 36–40. For the same reasons, MET alleges that Manatt is liable for constructive fraud in its Fifth Cause of Action. *See id.* ¶¶ 41–45. Both claims fail as a matter of law.

New York law is clear that "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract . . . , the fraud claim is redundant . . . ." *Sudul v. Computer Outsourcing Servs.*, 868 F. Supp. 59, 62 (S.D.N.Y. 1994) (dismissing the plaintiff's duplicative fraud claim on the grounds that it amounted to a claim that the "defendant never intended to uphold his end of the deal"). "To say that a contracting party intends when he enters into an agreement not to be bound by it is not to state 'fraud' in an actionable area, but to state a willingness to risk paying damages for breach of contract." *Id.* (quoting *Briefstein v. P.J. Rotondo Constr. Co.*, 187 N.Y.S.2d 866, 868 (1959)). "Implicit in the policy sanctioning the formalization of contractual undertakings is precaution against an existing intention not to be bound by the agreement as well as a future change of mind about being bound by it." *Id.* (citations and quotations omitted).

Here, the essence of MET's fraud claims is that Manatt allegedly failed to perform its duties under the Engagement Letter. MET's breach of contract claim alleges that Manatt failed to abide by the alleged fee-cap provision in the Engagement Letter. *See* Compl. ¶ 24 ("Manatt

breached the Engagement Letter when it unilaterally declared that Under Armour was not included in the *scope* of work . . . or the *case cap*." (emphasis added)).  This is precisely the same allegation underpinning MET's fraudulent inducement and constructive fraud claims.  *See id.* ¶ 37 ("In negotiating the Engagement Letter . . . Manatt affirmatively stated that it was prepared to and had received firm-management approval to enter into a *capped-fee* arrangement . . . which . . . would include a *litigation against Under Armour under the scope of engagement and fee cap.*" (emphasis added)), ¶ 43 (MET relied "on Manatt's material misrepresentations and omissions concerning the approved *scope* of Manatt's engagement." (emphasis added)).

MET reiterated this position in its pre-motion opposition letters.  *See* Second Opp. Letter at 1 ("Manatt represented during the negotiation of the Engagement Letter that its management had approved the *capped-fee arrangement set forth in the Engagement Letter* . . . ." (emphasis added)); *see also* Ex. B to August 20, 2020 Letter to Judge Analisa Torres from Nicole Hyland ("First Opp. Letter") at 2, ECF No. 20-2 ("Manatt never *intended* to pursue Under Armour under the *case cap in the engagement letter*." (emphasis added)).

In its Second Opp. Letter, MET attempted to salvage its fraud claims by arguing that the key misrepresentation was Manatt's statement that it had "management's approval" regarding the case cap and the scope of engagement.  Second Opp. Letter at 1–2.  This is a distinction without a difference.  MET fails to explain how this alleged misrepresentation amounts to anything more than Manatt's intention and ability to perform under the Engagement Letter, which cannot form the basis of a fraud claim.  *See Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 163 (S.D.N.Y. 1991) (dismissing the fraud claim as being duplicative because it "simply underscore[d] the defendant's purported *intention and ability to perform the contract*" (emphasis added)).

MET relies on *Sager v. Friedman*, 270 N.Y. 472 (1936) to support its argument that the alleged misrepresentation about management approval was "outside" the contract. *See* Second Opp. Letter at 1–2 ("*Sager* makes clear that fraudulent misrepresentations made prior to and outside of an agreement do 'not constitute a part of the contract; they were merely an inducement to the making of the contract.'"). *Sager* is readily distinguishable from the instant case. In *Sager*, the alleged misrepresentation related to a subject matter that was wholly distinct from the purpose of the contract. *See id.* at 481. Consequently, the Court in *Sager* found that the "fraudulent misrepresentations did not constitute a part of the contract," but "merely an inducement to the making of the contract." *Id.* By contrast, Manatt's alleged "management's approval" of the fee cap relates to a term that, according to the Complaint, is "a material and necessary term ***to the Engagement Letter***." Compl. ¶ 15. For that reason alone, MET's fraud claims must be dismissed. *See Ostano Commerzanstalt v. Telewide Sys., Inc.*, 794 F.2d 763, 766 (2d Cir. 1986) (dismissing the plaintiff's duplicative fraud claims because "as *Sager* . . . indicates, misrepresentations that form an essential part of the contract give rise not to a fraud claim, but rather to a claim for breach of warranty . . . .").[5]

---

[5] Furthermore, even if the alleged misrepresentation about management approval was a collateral promise (it was not), the allegation fails to support a fraud claim, which must be pled with specificity. *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 450 (S.D.N.Y. 2019) (dismissing plaintiff's fraud claim because it failed to "explain why [defendant had] a duty to disclose" the alleged fraudulent omissions and because it failed to "'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements'" (citing *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)); *see also Filler v. Hanvit Bank*, No. 01 CIV. 9510 (MGC), 2003 WL 22110773, at *2–*4 (S.D.N.Y. Sept. 12, 2003) (dismissing plaintiff's fraud claim because, even though "the allegations specif[ied] the 'what,'" they did "not [specifiy] the 'who, where and when' required for Rule 9(b)"). Here, the vague allegation that Manatt represented to MET that it had firm-management approval for the engagement is insufficient to state a claim for fraud.

MET also argues that its fraud claims should survive because they give rise to "*potentially* different harms." First Opp. Letter at 1–2 (emphasis added). This is incorrect. There are no distinct damages arising from MET's fraud claims. MET contends, for example, that the fraud damages include "approximately $295,000" MET has already paid Manatt. Second Opp. Letter at 2. Yet, MET concedes that these are the same damages that arise from its breach of contract claim. First Opp. Letter at 3 (arguing that the "breach of contract claim addresses fees MET paid but shouldn't have or fees that MET had to pay twice"). Indeed, MET appears to acknowledge that its fraud and contract damages overlap, while arguing that this defect should not be a basis to dismiss its fraud claim. Second Opp, Letter at 2 ("To the extent there is overlap between these remedies [for MET's fraud and breach of contract claims], it is ultimately a question concerning an election of remedies or jury instructions . . . ."). MET's failure to identify unique damages arising from its fraud claims is fatal. *See Atla-Medine v. Crompton Corp.*, No. 00 CIV 5901 HB, 2001 WL 170666, at *3 (S.D.N.Y. Feb. 21, 2001) (dismissing plaintiff's fraud claim as duplicative of its breach of contract claim since "the alleged damages caused by the misrepresentations" were "identical to the damages caused by the alleged breach of contract, and" arose from defendant's "failure to honor the terms of . . . contract"); *cf. Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986) (noting "there was *no* duplication of damages" between the fraud and the contract claims (emphasis added)). Thus, MET's fraud claims should be dismissed.

## II.

### MET'S CONSTRUCTIVE FRAUD CLAIM SHOULD BE DISMISSED BECAUSE IT CANNOT PLAUSIBLY ALLEGE A FIDUCIARY DUTY

MET's constructive fraud claim fails for the additional reason that there was no fiduciary relationship between Manatt and MET when they entered into the Engagement Letter, which is a

prerequisite for a constructive fraud claim. *See Harbinger Capital Partners LLC v. Deere & Co.*, 632 F. App'x 653, 656 (2d Cir. 2015) (citations omitted) ("Under . . . New York law, an omission is actionable [as fraud] only if the defendant had a duty to disclose[,]" which exists "when the parties stand in a fiduciary or confidential relationship with each other . . . ."). It is settled law in New York that no fiduciary or confidential relationship exists between an attorney and a prospective client when they first negotiate the fee agreement. Rather, the attorney and client stand "upon equal footing" when entering into an initial contract. *Clifford v. Braun*, 75 N.Y.S. 856, 858–59 (2d Dep't 1902) (cited with approval in *In re Carney*, 158 N.Y.S. 585, 589 (Sup. Ct. 1916); *Jacobson v. Sassower*, 452 N.Y.S.2d 981, 982 (Civ. Ct. 1982)).

MET concedes the rule in *Clifford* before going on to advance a theory that nullifies the rule. *See* Second Opp. Letter at 2–3 ("MET has no general quarrel with Manatt's description of the law on constructive fraud or fiduciary relationships . . . ."). According to MET, "following the formation of the attorney-client relationship," Manatt had a duty to disclose the intent it allegedly had prior to signing the Engagement Letter. *Id.* MET cites no law supporting this theory, because none exists. As the *Clifford* court stated: "[r]eason is the soul of law, and when the reason of any particular law ceases, so does the law itself." *Clifford*, 75 N.Y.S. at 859. Given that there was no fiduciary duty at the time the Engagement Letter was executed, MET's constructive fraud claim must be dismissed.[6]

---

[6] The evidence will show that, at the time the Engagement Letter was negotiated and long afterwards, both parties understood that the fee cap would apply only to the Hologenix Lawsuit. To the extent that MET now claims it had a different belief regarding the scope of the fee cap, it never disclosed that belief to Manatt and there is nothing in the Complaint to suggest otherwise. Manatt could not logically have a fiduciary duty to correct a secret and mistaken belief that it had no idea existed in the mind of its potential client. To suggest otherwise defies common sense and is certainly not a basis to "tortify" a simple breach of contract claim.

### III.

### MET'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED AS DUPLICATIVE OF ITS CONTRACT AND QUASI-CONTRACT CLAIMS

MET's Third Cause of Action seeks a declaration that: (a) it owes no additional fees to Manatt under the Engagement Letter; and (b) is entitled to a refund of some portion of fees paid. *See* Compl. ¶¶ 30–35. MET claims that it is not responsible for Manatt's fees because of Manatt's alleged "conduct with respect to Under Armour and its termination of its representation of MET . . . ." *Id.* ¶ 35. This is the same alleged "conduct" that MET claims constitutes a breach of the Engagement Letter. *See id.* ¶ 24 ("Manatt breached the Engagement Letter when it unilaterally declared that Under Armour was not included in the scope of work in the Engagement Letter or the case cap.").

A claim for declaratory relief fails when it merely duplicates a breach of contract claim and seeks a declaration of the same rights and obligations as will be determined in the action for breach. *See Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014) ("[P]laintiff's declaratory judgment claim must be dismissed for the independent reason that it is duplicative of his breach of contract claim." (emphasis added) (citations omitted)); *Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d 279, 281 (1988), disapproved of on other grounds by *Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470 (S.D.N.Y. 2009) (dismissing a declaratory judgment claim where determination of "parallel" breach of contract claim would "sufficiently guide the parties on their future performance of the contracts").

MET's declaratory judgment claim merely rehashes its breach of contract claim. A comparison of the two claims makes clear that they are based on the same conduct. *Compare* Compl. ¶ 24 (alleging that "Manatt breached the Engagement Letter when it unilaterally declared that Under Armour was not included in the scope of work in the Engagement Letter or the case

cap.") *with* Compl. ¶ 35 (alleging that "Manatt's conduct with respect to Under Armour" (i.e. its alleged refusal to include Under Armour in the fee cap) should deprive Manatt of "additional compensation for its services"). For this reason alone, MET's declaratory judgment claim must be dismissed as duplicative of its breach of contract claim. *See Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 403 (E.D.N.Y. 2012) ("Where . . . the same ***conduct*** underlies the . . . causes of action for declaratory judgment and breach of contract, courts . . . dismiss the declaratory judgment claim as duplicative in favor of the better or more effective remedy of the underlying litigation itself." (emphasis added) (citations and quotations omitted)).

In its pre-motion letters, MET did not dispute that the same conduct underlies its breach of contract and declaratory judgment claims. The only distinction that MET pointed to between these two claims is that they supposedly seek different "relief." *See* Second Opp. Letter at 3–4. It is axiomatic that a declaratory judgment claim seeks "relief" different from a breach of contract claim, since one seeks a declaration and one seeks damages. The relevant query is whether the "declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 250 (S.D.N.Y. 2006) (dismissing plaintiff's declaratory judgment claim as duplicative of its "other causes of action[,]" including for breach of contract and unjust enrichment). The answer here is: yes, it will. MET's declaratory judgment claim seeks a declaration that MET "does not owe any additional amounts to Manatt and that Manatt is required to return to MET those amounts it has paid to Manatt but for which it did not receive reasonable value from Manatt." Compl. ¶ 34.[7] In other words, it articulates a simple fee dispute

---

[7] MET has even muddled the "relief" it seeks in each of these claims. For instance, in its letter to the Court, MET argued that the breach of contract claim "addresses fees MET paid but shouldn't have or fees MET had to pay twice." Second Opp. Letter at 3. Yet in its Complaint, MET

between lawyer and client.  These remedies are available to MET under its breach of contract claim, as well as its unjust enrichment claim.  *See Young v. Rosenberg*, No. 14CV9377, 2017 WL 3267769, at *1 (S.D.N.Y. Aug. 1, 2017) (holding that in a breach of contract case, "a plaintiff may be entitled to ***elect between*** damages representing the benefit of the bargain made—expectation damages—and damages representing an undoing of the bargain altogether—restitution damages" under the "the equitable principle that a person who has been unjustly enriched at the expense of another is required to make restitution to the other" (emphasis added) (citations and quotations omitted)).

As for the fees owed to Manatt, but not yet paid, Manatt has made clear that it will file a counterclaim to recover its outstanding fees, the resolution of which will conclusively determine whether MET will be required to pay Manatt any additional amounts.  *See* Aug. 10, 2020 Joint Letter to Judge Analisa Torres re: Proposed Case Management Plan at 2, ECF No. 17 ("Manatt will assert a counterclaim to recover the full value of its legal services at its undiscounted hourly rates.").  In fact, MET acknowledges that Manatt's anticipated counterclaim is the predicate for its declaratory judgment claim.  *See* Compl. ¶¶ 31–35 (asserting that Manatt's claim for fees creates a controversy that justifies declaratory judgment).  MET implicitly acknowledges that the resolution of Manatt's counterclaims will nullify MET's declaratory judgment claim.  *See* Second Opp. Letter at 3 (conceding that the declaratory judgment claim addresses fees that Manatt intends to "seek through an as-yet filed counterclaim").  Despite acknowledging that

---

alleges those same damages as part of its declaratory judgment claim.  *See* Compl. ¶ 34 (requesting a declaration that "Manatt is required to return to MET those amounts it has paid Manatt but for which it did not receive reasonable value from Manatt").  Moreover, those damages are also alleged as part of MET's quasi-contract claim.  *See* Compl. ¶¶ 28–29 (alleging that MET has paid certain amounts billed by Manatt and has been billed but not paid other amounts" and demanding that Manatt "should … be required to return to MET any amounts that Manatt is not entitled to retain").

Manatt's counterclaim will render its declaratory judgment claim moot, MET argues that the declaratory judgment claim should not be dismissed because Manatt has not *yet* filed its counterclaim.  *See* First Opp. Letter at 3.  This is irrelevant.  Manatt will either file its counterclaim in this Action at the appropriate time or—if it does not—any such claim will be waived because it is a compulsory counterclaim.  *See D'Jamoos v. Griffith*, 368 F. Supp. 2d 200 (E.D.N.Y. 2005) (holding that attorney's claims against former client to recover fee under contingency fee agreement and to recover in quantum meruit were compulsory counterclaims in client's lawsuit against attorney).  Either way, the issue of whether MET owes additional fees to Manatt will be fully resolved by MET's contract claim, its unjust enrichment claim, and/or Manatt's counterclaim (or lack thereof).  A declaratory judgment claim is wholly redundant because it seeks resolution of issues that will be resolved in the course of this litigation and "is unnecessary and inappropriate" because MET "has an ***adequate, alternative remedy*** in another form of action, such as breach of contract."  *N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*, 25 F. Supp. 3d 459, 469 (S.D.N.Y. 2014) (emphasis added) (citations and quotations omitted)).  Thus, MET's declaratory judgement claim must be dismissed.

## CONCLUSION

Based on the foregoing, the Court should dismiss MET's claims for fraudulent inducement, constructive fraud, and declaratory judgment.

DATED: October 2, 2020                 FRANKFURT KURNIT KLEIN + SELZ PC

By: /s/ *Nicole Hyland*
    Nicole Hyland
    28 Liberty Street, 35th Fl.
    New York, NY 10005
    (212) 980-0120
    nhyland@fkks.com

    Vishwanath Kootala Mohan (Pro Hac Vice)
    2029 Century Park East, Ste. 1060
    Los Angeles, CA 90067
    (310) 579-9600
    vmohan@fkks.com

    *Attorneys for Defendant, Manatt, Phelps & Phillips, LLP*

## CERTIFICATE OF SERVICE

I Jacqueline Obispo, hereby certify that on this 2nd day of October, 2020, a copy of the foregoing **DEFENDANT MANATT PHELPS & PHILLIPS, LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** was served via email, to the following:

>Andrew M. McNeil (PHV)
>BOSE McKINNEY & EVANS LLP
>111 Monument Circle, Suite 2700
>Indianapolis, IN 46204
>(317) 684-5253; (317) 223-0253
>amcneil@boselaw.com
>
>Christopher Milito (CM 3563)
>Dupe Adegoke (MA 3815)
>MORRISON COHEN LLP
>909 Third Avenue
>New York, NY 10022
>(212) 735-8600
>cmilito@morrisoncohen.com
>dadegoke@morrisoncohen.com
>
>*Attorneys for Plaintiff, Multiple Energy Technologies, LLC*

    /s/ *Jacqueline Obispo*
Jacqueline Obispo